**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Case No. 1:24-cv-00003-MDB

TYRIQ MILLER and ISAAC SMITH,

    **Plaintiffs,**

v.

GILBERT'S TREE SERVICE, INC., d/b/a GILBERT'S TREE & LANDSCAPING,
GILBERT RODRIQUEZ, an individual, and JOHN MATHENY, an individual,

    **Defendants.**

---

**MOTION FOR DEFAULT JUDGMENT**

---

   **COME NOW** Plaintiffs Tyriq Miller and Isaac Smith, by and through counsel, and hereby move the Court to Enter a Default Judgment against Defendants pursuant to Fed. R. Civ. Proc. 55 & Local Rule 55.1. Attached is a proposed order based on Hon. Gordon P. Gallagher's grant of a default judgment motion in another similar wage case. *Miller v. Dirty Pit Craft House LLC*, No. 23-CV-00183-GPG-SBP, 2024 WL 4110792, at *1 (D. Colo. Mar. 24, 2024)

## I. INTRODUCTION

   Defendants underpaid Plaintiffs in violation of the Fair Labor Standards Act ("FLSA"), Colorado Minimum Wage Act, as implemented by the Wage Order, and Colorado Wage Claim Act (collectively, "CWA"). Defendants have entirely ignored both Plaintiffs' wage demand and this lawsuit; thus, Plaintiffs now seek a default judgment against them.

## II. PROCEDURAL HISTORY

   On January 2, 2024, Plaintiffs commenced suit against Defendants Gilbert's Tree Service Inc. and Gilbert Rodriquez alleging their wage claims as described below. [Dkt. 1]. On January

29, 2024, Defendant Rodriquez signed Waiver of Service forms on behalf of himself and the company [Dkt. 7,8]. On February 14, 2024, Defendant Rodriquez and Plaintiff's attorney Joe Galera spoke by phone. As a result of that conversation, Plaintiff's counsel filed a Motion to Continue Scheduling Conference, noting in part that "7. Plaintiff's counsel has been conferring the individual Defendant on February 14, 2024 and February 29, 2024 where he learned new information about the company and its current owner. Upon information and belief, Plaintiff's counsel may need to amend the pleadings to include a new Defendant." [Dkt. 9]. On March 30, 2024, Plaintiffs filed a First Amended Complaint, prior to any answer or other responsive pleading having been filed, adding John Matheny as an additional Defendant. [Dkt. 11]. Mr. Matheny was served with process on May 24, 2024. [Dkt. 16]. Having received no answers, Plaintiffs requested the Clerk's Certificates of Default on August 27, 2024. [Dkt. 21-26]. The Clerk filed entries of default as to all three Defendants on August 28, 2024. [Dkt. 27-29]. In response to the Court's Order of September 3, 2024, Plaintiffs timely file this Motion for Default Judgment. [Dkt. 32].

## III. PRELIMINARY MATTERS

### A. <u>Standard of Review</u>

"Default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains,* 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

Pursuant to Rule 55(b)(1), default judgment must be entered by the clerk of court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Before granting a motion for default judgment, the Court

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 2

must first ensure that it has personal jurisdiction over the defaulting defendants and subject matter jurisdiction over the action. See *Williams v. Life Sav. and Loan*, 802 F. 2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact, which are deemed admitted by a defendant in default, support a judgment on the claims against the defaulting defendants. See *Fed. Fruit and Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. March 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.") (Citations omitted). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id.* (citing *Dundee Cement Co. v. Howard Pipe and Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

### B.  **No Hearing Is Necessary**

As relevant here, Fed. R. Civ. Proc. 55(b)(2) says that "The court *may* conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: …determine the amount of damages." (Emphasis added). "To determine the amount of damages that should be awarded on a default judgment, Rule 55(b)(2) 'leaves the decision of whether a hearing is necessary to the discretion of the district court.'" *Changxing v. Kai Xiang Dong*, 15 Civ. 7554-GBD-AJP (S.D.N.Y. Mar. 31, 2017), citing *Fustok v. Conticommodity Services, Inc*, 873 F.2d 38, 40 (2d Cir. 1989).

While recognizing that district courts may and sometimes do hold hearings to establish damages in default contexts, doing so is not required, and in this case Plaintiffs ask that the Court in its discretion decide not to do so. First and foremost, the damages alleged are computable from the documentary evidence provided herewith. The Plaintiffs have attested to the relevant bases for calculation (such as hours worked, pay received, and duration of employment) in the attached

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 3

Declarations. Beyond that, the damages calculations become a matter of the application of legal principles and math. Second, while counsel can attend court if necessary on Plaintiffs' behalf, the time and expense of doing so would be not insignificant, and would not provide information materially different from these submissions. Thus, we request that no hearing be held. Should, however, the Court decide that a hearing is necessary, we respectfully request that Plaintiffs and their counsel be permitted to appear by telephone.

### C. <u>Jurisdiction</u>

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' FLSA claims arise under federal law [Dkt. 14, Amended Complaint, at ¶¶9, 10, 11].

The Court has personal jurisdiction over the Defendants for the following reasons. As to the corporate Defendant, Gilbert's Tree Service, Inc. "is a corporation doing business within El Paso County, and whose principal place of business is located at 11556 Co. Hwy 94, Colorado Springs, CO 80929" [Dkt. 11 p. 3 ¶ 8]; <u>see also</u> Ex. 01, Secretary of State listing (as of 10/4/2024) and Ex. 02 El Paso County Property records for that address (showing Defendant Rodriquez as the owner of that parcel).

As to Defendant Gilbert Rodriquez, as alleged, he "resides at 8525 Squirrel Creek Rd., Fountain, CO 80817." [Dkt. 11 p 4 ¶ 14]; <u>see also</u> Ex. 02 (listing that address as the mailing address for him as the company's registered agent, even as of 10/4/2024) and Ex. 03 (listing him as the owner of that parcel in El Paso County's property records). This Defendant filled out his Waiver of Service form indicating a Florida address. [Dkt. 8]. Regardless of whether he is a resident of Colorado or Florida, jurisdiction over him is proper. As to the latter possibility, "A court may assert specific jurisdiction over a nonresident defendant if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from the

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 4

alleged injuries that arise out of or relate to those activities." *Powers v. Emcon Assocs., Inc.,* No. 14-CV-03006-KMT, 2016 WL 1111708, at *5 (D. Colo. Mar. 22, 2016) "If such purposeful availment in the form of minimum contacts is shown, a court must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.* (internal citations omitted). Here, in addition to being an alleged additional employer of the Plaintiffs, this Defendant still owns the real estate on which the company address is listed, as well as the real estate listed as the registered agent address with the Secretary of State. [Ex. 01, 02, 03]. Further, my proactively waiving service, he has purposefully made himself subject to this Court's jurisdiction.

Defendant John Matheny was not listed in the original Complaint, but was added as a Defendant in the Amended Complaint. [Dkt. 1, 11]. He was alleged to be a resident of Colorado. *Id.* Attached is a property record from Pueblo County showing that he owns the residential real estate located at 260 W Venturi Drive, Pueblo West, CO [Ex. 04].

Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiffs' related claims brought under Colorado law.

## IV. FACTUAL BACKGROUND

### A. Plaintiffs and Their Work and Pay

Plaintiffs Tyriq Miller and Isaac Smith worked as arborists for Gilbert's for a few years each. Miller worked there from approximately June 1, 2020, to August 2, 2023. [Dkt. 11 p. 1 ¶1, p. 6 ¶10]. Smith worked there from approximately August 1, 2020, to August 2, 2023. [*Id.* at p. 1 ¶1, p. 8 ¶27].

As indicated in the attached paystubs they retained, and the spreadsheet summary thereof, their rates and methods of pay varied almost week to week. [Ex. 05, 06]. Typically when the

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 5

quantity of hours was listed as being fewer than 40, the payment was listed as being at an hourly rate of between $20-$25 per hour. *Id*. When the quantity of hours listed was being exactly 40, the payment was listed as being a "salary" (but of varying amounts week to week). *Id*. In "Gilbert's Tree Service Policies and Procedures," item 9 states, "Crew members will continue to be paid according to work performance and at the level of knowledge exhibited and used on the job site." [Ex. 07].

As indicated by the notes attached to Plaintiff Smith's paystubs "Jon takes out 5 hours a week for a 'break' that we do not receive" and "hours are always fluctuating & incorrect b/c he deducts hours" [Ex. 06pp. 11, 13]. Plaintiff Smith also indicated that he "went to Cali to pick up boom truck & drive back. I received bonus personal of $1200, for going to California. When I got back, he started to deduct my bonus out of reg checks, but deducting money and/or hours" [*Id*. at p. 17]. Two paystubs indicate $100 deductions. [*Id*. at p. 17-18]. Plaintiffs have also alleged that they had deductions made to their pay for damaged equipment and tools. ." [Dkt. 11 p. 7 ¶24]. This is consistent with the Policies and procedures statement No. 5 which states, "You break it or lose it – you bought it. Crew members will be required to pay ½ of the total costs of equipment lost or broken, due to neglect or irresponsibility…." [Ex. 07]. Plaintiffs have also alleged that they were not paid for the preliminary and postliminary work they did at the start and end of their workdays. [Dkt. 11 p. 7 ¶24].

Based on the above factual allegations Plaintiffs have brought claims for failure to pay for all hours worked (including failure to pay for preliminary and postliminary work, deductions of time for breaks they did not receive, otherwise "shaving" hours when more than 40 hours were worked in the week), failure to pay overtime, improper deductions to pay,

Separately from the fact that time was affirmatively deducted from their recorded

working hours for meal breaks they did not receive as an item of underpayment for time worked, Plaintiffs have also alleged that the Defendants' failure to provide meal and break times violates state law requirements to do so.

Plaintiffs also claim state law penalties premised upon the fact that Defendants have made no tenders of wages in response to the claims they have informed Defendants about. More specifically, as mentioned above, prior to commencing litigation Plaintiffs, through counsel, reached out to Defendants by letter dated July 25, 2023 letting them know that the Plaintiffs were raising wage claims coupled with an invitation to enter into a tolling agreement so as to be able to discuss settlement opportunities rather than immediately filing the claim in court. [Ex. 08]. Unfortunately, in response, Defendants terminated Plaintiff Miller on August 2, 2023 [Dkt. 11 pp. 6-8 ¶10, 25]. Plaintiffs filed this action on January 2, 2024. [Dkt. 1]. This included an allegation that if Defendants failed to pay all wages owed within 14 days of receiving the lawsuit they would owe the Plaintiffs statutory damages as set forth in C.R.S. § 8-4-109. [Dkt. 11 p. 12 ¶75]. Defendants were served on January 29, 2024 and May 24, 2024 as set forth above. No Defendant has tendered any funds in response to this lawsuit, and more than 14 days has passed since their receipt thereof.

In addition to the wage payment improprieties, Plaintiffs have made allegations in regard to retaliation. Specifically, they allege that "Upon receipt of Plaintiffs' counsel's letter making a preliminary introduction including that the firm's representation was in regard to the Plaintiff'wage claim, Defendants terminated [both of them]." [Dkt. 11 p. 6-9 ¶ ¶10, 25, 27, 41; Ex. 08, letter].

**B. Individual Defendants**

Defendant Gilbert Rodriquez is an owner of the company. [Dkt. 11 p. 3 ¶8]. He owns the

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 7

real estate for the company's address. [Ex. 02]. He is the registered agent as well. [Ex. 03]. Plaintiffs allege their primary day to day supervisor was Defendant Rodriquez. [Dkt. 11 pp. 6 ¶ 11]. He was, in essence, the "big boss."

John Matheny served as a manager of the company. [Ex.09 business report; Ex. 10, BBB review.] He also supervised the Plaintiffs, including having the ability and authority to hire and fire, set rates of pay and set schedules. [Dkt. 11 p. 5 ¶ 3]. For example, when Plaintiff Miller had questions about his pay, he texted Mr. Matheny about it. [Ex.07].

## V. JOINT and SEVERAL LIABILITY

Under federal and state law, in addition to the company, Defendants Gilbert Rodriquez and John Matheny were "employers" of the Plaintiffs.

Since January 1, 2020, the CWA's definition of "employer" mirrors that in the FLSA.[1] C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6; Colorado H.B. 19-1267. The Colorado Division of Labor Standards and Statistics also published an Interpretive Notice and Formal Opinion ("INFO") on the topic of individual liability and describes the standard as follows:

> "Under Section 203(d) of the FLSA, an 'employer' includes '*any person* acting directly or indirectly in the interest of an employer in relation to an employee,' and the FLSA also defines a 'person' as '*an individual*, partnership, association, corporation, business trust, legal representative, or any organized group of persons.' 29 U.S.C. 203(a),(d) (emphasis added). 'The term "person" is…broadly defined under the FLSA to include…an "individual." Thus, an individual who acts directly or indirectly in the interest of an employer in relation to an employee, including an individual corporate officer, owner, participating shareholder, manager, or supervisor, may be subject to individual liability for FLSA violation.'" [CDLE INFO #11A[2]], p. 1-2 (emphasis in original).

---

[1] All of the relevant nonpayment events took place after January 1, 2020, so only this standard need be examined.

[2] Available at
https://cdle.colorado.gov/sites/cdle/files/INFO%20%2311A%20Individual%20Liability%20Under%20the%20CWA%20and%20HFWA%2006.30.2021%20accessible.pdf

The FLSA's definition of "employer" can and frequently does cover certain individuals as well as corporate entities. The longstanding four-factor "economic realities test" has been adopted by the Tenth Circuit for determining an employment relationship under the FLSA, which Colorado has adopted in state law. *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1189–90 (D. Colo. 2012), <u>citing</u> *Baker v. Flint Eng'g and Const. Co.*, 137 F.3d 1436, 1439 (10th Cir.1998). The *Koellhoffer* court describes this analysis as follows:

> "The *Baker* court held that "[t]he economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." [ ]. In determining whether a particular individual is an employer, courts have also looked at the level of operational control the individual had over the company, meaning that the individual is either 'involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'"

(Internal citations omitted). Courts have also looked at the level of "operational control" the individual has over the company, including whether s/he is involved in the day-to-day operations and/or has some direct responsibility for the supervision of the employees. *Baker*, 137 F.3d at 1439. The breadth of coverage for individuals is intentionally expansive and not designed to be a continuation of the previous standard requiring a showing akin to a corporate veil piercing.

Following the change in the CWA there is no dispute that both individual Defendants were Plaintiffs' "employers" as that term is defined by the COMPS Order. 7 C.C.R. 1103-1(1.6) [Dkt. 1, ¶¶11–13, 18]. Plaintiffs have alleged that the individual Defendants hired them, set their rates of pay and work schedules, and supervised them daily. More generally, Defendants had "operational control" of the company. Therefore, looking at the economic realities, Defendants were Plaintiffs' "employers" and thus should be found to be jointly and severally liable for the violations complained of herein under the FLSA and CWA.

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 9

## VI. STATUTES of LIMITATION and WILLFULNESS

For minimum wage, overtime, claims and other claims brought under the Colorado Minimum Wage Act (C.R.S. § 8-6-101 *et seq*.), a six year statute of limitation applies. *Perez v. By the Rockies, LLC*, 543 P.3d 1054, 1055 (COA 2023); *Sobolewski v. Boselli & Sons, LLC*, 342 F. Supp. 3d 1178, 1187-89 (D. Colo. 2018); *Cordova-Gonzalez v. Tw Lath-N-Stucco, Inc*., No. 21-CV-01617-CMA-KMT, 2021 WL 5086065, at *2 (D. Colo. Nov. 2, 2021). Claims brought under the FLSA or under the Colorado's Wage Act (C.R.S. § 8-4-101 *et seq*.) have a standard statutory period of two years that can be extended upon a finding of willfulness. C.R.S. § 8-4-122, 29 U.S.C. § 255(a).

The Complaint in this action was filed on January 2, 2024. [Dkt. 1]. Plaintiffs worked for Defendants from June and August, 2020 until they were both fired on August 2, 2023. Therefore the entirety of their employment is covered by the six year period applicable to state law minimum wage, overtime, claims and meal break claims.

A three year period applies to the rest of the claims. Defendants had no good faith basis for believing their practices were compliant with the law, fired the Plaintiffs after learning they were pursuing wage claims with the assistance of an attorney and failed to respond to this lawsuit. As such, Defendants' violations are willful. A court may accept allegations of willfulness as true where defendants have defaulted. *Changxing v. Kai Xiang Dong, Ling Lin, Iron Sushi Third Ave., Inc.*, 15 Civ. 7554 (GBD) (AJP) (S.D.N.Y. Mar. 7, 2017) (collecting sites). Thus, any of their remaining claims arising on or after January 2, 2021 should be included.

## VII. PLAINTIFFS HAVE ALLEGED FACTS ESTABLISHING LIABILITY

Plaintiffs ultimately seek recovery of a) the greater of their owed back wages or owed minimum wages (which in this case means the former) b) liquidated damages in the amount of their unpaid FLSA minimum wages c) statutory penalties due to the underpayments pursuant to state law d) retaliation damages under state and federal law and e) attorney fees and costs as provided for under all three.

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 10

## A. **Time Worked and Unpaid Hours**

Since Defendants have not responded to this lawsuit, Plaintiffs have not been able to have the benefit of discovery, where they would have asked for copies of all timekeeping and pay records that the employer is required to keep. 29 C.F.R. § 516.2. Plaintiffs have, however, attached the paystubs that they were able to locate. Of Miller's 16 paystubs, 9 of them (56%) listed 40 hours; the other 7, fewer. [Ex. 05]. Similarly, of Smith's 21 legible paystubs, 11 of them (52%) listed 40 hours; the others, fewer. [Ex. 06]. As this was a business that was affected by weather conditions and customer needs, it makes sense that there would be ups and downs of this sort.

Plaintiffs have alleged that they were not paid for preliminary and postliminary work of about an hour a day. They have also alleged they had half an hour per day deducted for breaks that they did not actually always receive. [Dkt. 11 pp. 7,9 ¶ 22-23, ¶38-39]. They have also alleged that they had hours shaved off whenever they worked more than 40 hours, which is consistent with the Defendants' practice of calling their pay a "salary" when they worked more than 40 hours and just listing the number of hours worked as 40 on the paystub.

Putting all this information together, as a matter of just and reasonable inference necessitated by the lack of records, Plaintiffs therefore estimate that in the weeks they worked overtime (which they estimate to have occurred 52-56% of their workweeks) they were underpaid for 12 hours a week, and in the weeks in which their hours were under 40 hours a week they were not paid for about 7 hours a week of compensable time.

## B. **Overtime**

Based on the above, Plaintiffs estimate as follows in regard to their unpaid overtime:

|  | Miller | Smith |
|---|---|---|
| Start | 6/1/20 | 8/1/20 |

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 11

| | | |
|---|---|---|
| End | 8/2/23 | 8/2/23 |
| Weeks | 165.29 | 156.57 |
| Rate | $ 22.50 | $ 22.50 |
| OT Rate | $ 33.75 | $ 33.75 |
| % of OT Wks | 56% | 56% |
| Est OT Weeks | 92.56 | 87.68 |
| Est Unpaid Hrs per OT Week | 12 | 12 |
| Unpaid OT per OT Wk | $ 405.00 | $ 405.00 |
| **Est unpaid OT for OT wks** | **$ 37,486.80** | **$ 35,510.40** |

### C. Unpaid Non-Overtime Hours

For the majority of the Plaintiffs' employment, when they were within the 3 year statutory period, any hours for which they were not paid but that were not overtime hours would violated both the Colorado Minimum Wage Act and the Colorado Wage Act. As Plaintiffs cannot claim duplicative damages under these they claim the higher of the two. Thus, during the 3 year statutory period they seek the full amount of their wages (i.e. $22.50 per hour) times the 44-48% of weeks in which Plaintiffs claim damages for non-overtime work. The resulting calculations from this are as follows:

| | **Miller** | **Smith** |
|---|---|---|
| Start of 3 yr SOL | 1/2/21 | 1/2/21 |
| Weeks in 3 yr SOL | 134.57 | 134.57 |
| Est non-OT Weeks in 3 yr SOL | 59.21 | 64.59 |
| Est Unpaid Hrs per non-OT Week | 7 | 7 |
| Unpaid non-OT hrs per non-OT Wk | $ 157.50 | $ 157.50 |
| **Est unpaid unpaid non-OT wages** | **$ 9,325.80** | **$ 10,173.60** |

For the few remaining weeks at issue, i.e. from June through December, 2020, Plaintiffs seek damages under the Minimum Wage Act since those hours were not paid at all. For those weeks the calculations are as follows:

| | **Miller** | **Smith** |
|---|---|---|
| Est non-OT Weeks in 3-6 yr SOL (MW) | 13.51 | 10.56 |
| 2020 CO Min Wage Rate | $ 12.00 | $ 12.00 |

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 12

| Est Unpaid Hrs per non-OT Week | 7 | 7 |
|---|---|---|
| Unpaid non-OT hrs per non-OT Wk | $ 84.00 | $ 84.00 |
| **Est non-OT MWs owed in 3-6 yr SOL** | **$ 1,135.20** | **$ 887.04** |

### D. <u>Deductions</u>

Plaintiffs have alleged that the employer made unlawful deductions from their pay for reasons such as broken tools. However, the only deductions that Plaintiffs have shown herein are Plaintiff Smith showing in his paystubs where two instances of $100 deductions were made for the employer taking back a bonus it had paid him for driving to California. Thus, at this time Plaintiff Smith claims $200 in unlawful deductions.

### E. <u>Colorado Wage Act Statutory Damages</u>

Plaintiffs are entitled to an award of the statutory penalties set forth in C.R.S. § 8-4-109(3). Defendants have not tendered any payment in response to, relevant here, their receipt of the Complaint in this action, much less within 14 days thereof. *Damitio v. Sushi Zanmai Inc.*, No. 12-CV-2603-JLK, 2013 WL 136186, at *1 (D. Colo. Jan. 10, 2013) ("nothing precludes a complaint from functioning as the 'written demand' mandated by the statute").

The penalties are to be calculated as follows:

*(I) The greater of two times the amount of the unpaid wages or compensation or one thousand dollars; or*

*(II) If the employee can show that the employer's failure or refusal to pay wages or compensation was willful, the greater of three times the amount of the unpaid wages or compensation or three thousand dollars.*

Colo. Rev. Stat. Ann. § 8-4-109(3)(b).

Adding the categories of damages described above results in the following numbers for the Plaintiffs: Miller, $47,947.80 and Smith, $44,234.58. Three times those numbers is $143,843.40 for Miller and $132,703.75 for Smith.

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 13

### F. **FLSA Liquidated Damages**

Defendants failed to pay Plaintiffs at or above minimum wage for all hours worked. At all relevant times that amount was $7.25 per hour. Minimum wage underpayment determinations are made on a workweek by workweek basis. 29 C.F.R. § 778.105. As a hypothetical example, if a plaintiff had worked 10 hours in a week and had an hourly rate of $20 per hour, and was paid for only two of those hours (i.e. $40), she would have a minimum wage claim because the $40 received would be less than the federal minimum wage times the hours worked ($7.25 x 10 hours = $72.50). The underpayment pursuant to federal law would therefore be $32.50 (plus that amount again for liquidated damages). It would not be $160 under federal law (i.e. 10 hours x $20/hr = $200, minus $40). See *Tackie v. Keff Enterprises, LLC*, No. 14-CV-2074-JPO (S.D.N.Y. Sept. 16, 2014).

In addition to the back wages, and having established a violation of the FLSA, Plaintiffs request the Court award FLSA liquidated damages. "Any employer who violates the provisions of…section 207…shall be liable to the employee or employees affected in the amount of their … unpaid overtime compensation…and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); *Francisco v. Susano*, Civil Case No. 10-cv-00332-CMA-MEH (D. Colo. Sep. 10, 2013). In order to avoid being assessed liquidated damages, the employer must be able to show that it acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA. 29 U.S.C. § 260. "Reasonableness imposes an objective standard by which to judge the employer's behavior. *Id.* Only where the court finds that the employer meets this burden, may it, in its sound discretion, deny liquidated damages." *Reyes v. Snowcap Creamery, Inc.*, Civil Action No. 11-cv-02755-JLK-KMT (D. Colo. Mar. 20, 2014). Defendants, having failed to appear in this action or respond to the Complaint in any form, have done nothing

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 14

to meet their burden.

Here, Plaintiffs seek liquidated damages within the 3 year FLSA statutory period as follows:

| | Miller | Smith |
|---|---|---|
| Start of 3 yr SOL | 1/2/21 | 1/2/21 |
| End | 8/2/23 | 8/2/23 |
| Weeks | 134.57 | 134.57 |
| OT Rate | $ 33.75 | $ 33.75 |
| % of OT Wks | 56% | 52% |
| Est OT Weeks in FLSA SOL | 75.36 | 69.98 |
| Est Unpaid Hrs per OT Week | 12 | 12 |
| Unpaid OT per OT Wk | $ 405.00 | $ 405.00 |
| **Est unpaid OT for OT wks in FLSA SOL** | $ 30,520.80 | $ 28,340.74 |
| FLSA MW | $ 7.25 | $ 7.25 |
| Est Unpaid Hrs per non-OT Week | 7 | 7 |
| Est non-OT Weeks in FLSA SOL | 59.21 | 64.59 |
| Unpaid non-OT hrs per non-OT Wk | $ 50.75 | $ 50.75 |
| **Est non-OT MWs owed in FLSA SOL** | $ 3,004.98 | $ 3,278.16 |
| **FLSA Liquidated Damages** | $ 33,525.78 | $ 31,618.90 |

Plaintiffs are entitled to recover both liquidated damages and the CWA statutory penalties. *Evans v. Loveland Auto. Invs., Inc.,* No. 15-1049 (10th Cir. 2015). This is not a double recovery because the laws "serve different purposes—the FLSA damages are compensatory and the [state law] damages serve a punitive purpose." *Id.,* citing with approval *Do Yea Kim v. 167 Nail Plaza,* No. 05 CV 8560 (GBD), 2008 WL 2676598, at *3 (S.D.N.Y. July 7, 2008). In other words, FLSA liquidated damages and C.R.S. interest are designed to make the plaintiffs whole; the CWA penalty provision is designed to punish and/or deter wrongful conduct. Pursuant to C.R.S. § 8-4-109(3)(b), if an employee is not paid his earned, vested, and determinable wages or compensation within fourteen days after sending a written demand for payment, his employer is liable to him for the wages plus a penalty.

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 15

**G. <u>Retaliation</u>**

"Both the CWCA (at Colo. Rev. Stat. § 8-4-120) and the FLSA (at 29 U.S.C. § 215(a)) prohibit an employer from retaliating against an employee's invocation of wage protection rights." *Jones v. Peopleready Inc.*, No. 21-CV-01688-PAB-MEH, 2022 WL 2176286, at *6 (D. Colo. June 16, 2022). The two statutes are "generally the same" *Ott v. ChaCha in Art, LLC*, 506 F. Supp. 3d 1133, 1144 (D. Colo. 2020)

FLSA retaliation claims are subject to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997). In order to establish a *prima facie* case of retaliation under the FLSA, the plaintiff must show that: (1) he engaged in activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997))

Filing a FLSA lawsuit in federal court constitutes a protected activity. Termination from employment can form the basis of a retaliation claim. *Jones*, at *7.

"A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001), <u>citing</u> *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982). The Tenth Circuit applies a "motivating factor" analysis to claims of retaliation under § 215(a)(3) of the FLSA. *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1483 (10th Cir. 1996)"When the 'immediate cause or motivating factor of [the adverse action] is the employee's assertion of statutory rights, the [adverse action] is discriminatory under § 215(a)(3) whether or not other grounds for [the adverse action] exist.'" *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir.) The motivating factor test is equivalent to a "but for" inquiry— the adverse action is unlawful "only if it would not have

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 16

occurred *but for* the retaliatory intent." *Martin v. Gingerbread House, Inc.,* 977 F.2d 1405, 1408 n. 4 (10th Cir.1992). Here, Plaintiffs allege "that Defendants violated the anti-retaliation provisions of the FLSA and CWCA by terminating them in response to their lawyer reaching out to the Defendants regarding their wage claim." (Dkt. 11 p. 2 ¶ 3) and that "Plaintiffs hired counsel to pursue claims related to their underpaid wages. When counsel wrote Defendants a letter of introduction, including that the nature of the dispute was a wage claim, Defendants responded by immediately terminating both Plaintiffs' employment. (*Id.* at p. 13 ¶ 66). They allege the last date of their employment was August 2, 2023 and the letter from their counsel addressed to all two Defendants was dated July 25, 2023 stating in relevant part "This firm represents Tyriq Miller and Isaac Smith in their claim for underpaid wages owed to them pursuant to state and federal law against Gilbert's Tree Service, Inc. d/b/a Gilbert's Tree and Landscaping and potentially yourself individually as a joint "employer" as that word is defined by the laws at issue." (Ex. 8). This temporal proximity is sufficient to infer causation under the applicable standards.

The categories of damages for retaliation claims have not been clearly defined. *Johnston v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1229 (D. Utah 2002) (analyzing various decisions regarding the availability of punitive damages). The statutory language is that remedies include "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Thus, at a minimum, back pay and an equal amount as liquidated damages are available. Whether front pay, emotional distress damages, and/or punitive damages are available is unclear in this jurisdiction. For the sake of simplicity and in the pragmatic recognition that the amount of

judgment at issue may already be stretching the limits of Defendants' ability to pay, Plaintiffs therefore are not seeking those categories of damages.[3]

If they had remained working with Defendants we can estimate that the Plaintiffs would have worked about 45 hours a week, at a rate of $22.50 per hour, which is (40 hours x $22.50) + (5 hours x 1.5 x $22.50) = $1068.75 per week. Plaintiff Miller in his declaration has asserted that after he was fired by the Defendants, he was out of work for 6 weeks; Plaintiff Smith, 4 weeks. [Ex. 11-12, Declarations]. Therefore their back pay damages for their retaliation claims are $6,412.50 for Plaintiff Miller and $4,275.00 for Plaintiff Smith, plus an equal amount for liquidated damages.

### H.  C.R.S. § 5-12-102 Prejudgment Interest

Colorado statutory law provides for 8% interest, compounded annually, on money that has been "wrongfully withheld." C.R.S. § 5-12-102(1)(a). This provision is designed to "fully recognize[] the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered." *Id*.; *Shannon v. Colorado School of Mines*, 847 P.2d 210, 213 (Colo. App. 1992) (awarding 8% prejudgment interest to wages owed under state law). A Plaintiff may <u>not</u> recover both liquidated damages and interest, as they are both meant "'to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment.'" *Greene v. Safeway Stores, Inc*., 210 F.3d 1237, 1247 (10th Cir. 2000). However, Plaintiff <u>is</u> also entitled to recover, on his backpay damages only, prejudgment interest on the difference between the (higher) computed wage rates owed pursuant to the CWA and the (lower)

---

[3] Should default later be opened in this case, Plaintiffs reserve the right to revisit these other categories of damages that may be available to them.

*Miller v. Gilbert's Tree Service, Inc,, et al.*
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default
Page 18

federal minimum wage rate.

As indicated above, Plaintiffs are seeking FLSA liquidated damages only on their FLSA based minimum wage damages for the hours of her work per week. The remaining wages owed to Plaintiffs should get paid their normal hourly rates for all hours worked and having thus far not received any liquidated damages, interest or any other form of compensation to offset the time value of that money. As such, Plaintiffs request prejudgment interest at a rate of 8% per annum, compounded annually, to the date of the Order on this motion. Plaintiffs propose that once the Order date has been established, counsel will calculate this amount in conjunction with the fees motion described below.

## I. **Attorneys' Fees and Costs**

Should the Court grant the Plaintiffs' motion for default, pursuant to the FLSA (29 U.S.C. § 216(b)) and the CWA (C.R.S. § 8-4-110) Plaintiffs are entitled to his attorneys' fees and costs from the Defendants and to post-judgment interest. 28 U.S.C. §1961. Plaintiffs request that, upon a successful motion for default judgment, the Court permit Plaintiffs' counsel to move separately for attorneys' fees and costs. Plaintiffs request that the Court grant liability for fees and costs with the amount to be determined pending that forthcoming separate motion.

## VIII. CONCLUSION

Following is a summary of the damages sought as described above:

(1) Wage Damages

        a.  <u>Miller</u>

| | |
|---|---|
| Actual damages (underpaid wages): | $ 47,947.80 |
| Liquidated damages under the FLSA | $ 33,525.78 |
| <u>Statutory penalties under the CWA</u> | <u>$143,843.40</u> |
| SUBTOTAL | $225,316.98 |

        b.  <u>Smith</u>

| | |
|---|---|
| Back Pay | $ 44,234.58 |
| Liquidated damages | $ 31,618.90 |
| <u>Statutory penalties under the CWA</u> | <u>$132,703.75</u> |

*Miller v. Gilbert's Tree Service, Inc,, et al.*  
Case No. 1:24-cv-00003-MDB (Dist. Colo.)

Motion for Default  
Page 19

|                                   |                |
|-----------------------------------|----------------|
| SUBTOTAL                          | $208,557.23    |

(2) Retaliation Damages

    a.  <u>Miller</u>

|                          |            |
|--------------------------|------------|
| Back pay damages:        | $ 6,412.50 |
| Liquidated damages       | $ 6,412.50 |
| SUBTOTAL                 | $12,825.00 |

    b.  <u>Smith</u>

|                          |            |
|--------------------------|------------|
| Back pay damages:        | $ 4,275.00 |
| Liquidated damages       | $ 4,275.00 |
| SUBTOTAL                 | $ 8,550.00 |

(3) Prejudgment interest under Colorado Law (at a rate of 8%, compounded annually, from the midpoint of each Plaintiff's employment to the date of the Order on this motion, in a dollar amount to be computed by counsel in conjunction with their motion for attorney fees);

(4) Post-judgment interest (at a daily rate as determined by the Clerk of the Court) until Defendants comply with the judgment;

(5) Attorneys' fees and costs (in an amount to be determined by the Clerk of the Court upon Plaintiff's counsels' further submission); and

(6) Any such other and further relief as the Court deems proper.

WHEREFORE, the Plaintiffs request that default judgment be entered against Defendants, jointly and severally, that they be awarded damages as outlined above, and that upon entry of the default judgment they, as the prevailing party, be granted leave to request his attorneys' fees and costs through a separate motion.

Respectfully submitted, this **7th** day of **October**, **2024**.

ANDERSONDODSON, P.C.

*s/ Penn Dodson*
**Penn A. Dodson**
*penn@andersondodson.com*
11 Broadway, Suite 615
New York, NY 10004
(212) 961-7639
Attorney for Plaintiffs

**<u>LIST OF EXHIBITS</u>**

1. Secretary of State listing for Gilbert's Tree Service, Inc.
2. El Paso Co. property records (company address)
3. El Paso Co. property records (Rodriquez residential address)
4. Pueblo Co. property records (Matheny residential address)
5. Miller Paystubs & Summary
6. Smith Paystubs & Summary
7. Policies & Procedures
8. 7/25/2023 Letter Inviting Tolling
9. Business Report
10. BBB Review
11. Declaration of Tyriq Miller
12. Declaration of Isaac Smith