**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Case No. 1:24-cv-00003-CNS-MDB

Tyriq Miller and Isaac Smith,

   **Plaintiffs,**

**v.**

Gilbert's Tree Service, inc., d/b/a Gilbert's Tree & Landscaping,
Gilbert Rodriquez, an individual, and John Matheny, an individual,

   **Defendants.**

---

**RENEWED AND AMENDED MOTION FOR DEFAULT JUDGMENT**
**(AS TO DEFENDANT JOHN MATHENY ONLY)**

---

**COME NOW** Plaintiffs Tyriq Miller and Isaac Smith, by and through counsel, and hereby move the Court to Enter a Default Judgment against Defendant John Matheny pursuant to Fed. R. Civ. Proc. 55 & Local Rule 55.1.

Attached is a proposed order based on Hon. Gordon P. Gallagher's grant of a default judgment motion in another similar wage case. *Miller v. Dirty Pit Craft House LLC*, No. 23-CV-00183-GPG-SBP, 2024 WL 4110792, at *1 (D. Colo. Mar. 24, 2024).

## I.  INTRODUCTION

Defendants underpaid Plaintiffs in violation of the Fair Labor Standards Act ("FLSA"), Colorado Minimum Wage Act, as implemented by the COMPS, and Colorado Wage Claim Act (collectively, "CWA"). Defendant John Matheny has failed to secure counsel or appear, and has failed to defend the present action; Plaintiffs now move for a default judgment against him.

## II.  PROCEDURAL HISTORY

On January 2, 2024, Plaintiffs commenced suit against Defendants Gilbert's Tree Service Inc. and Gilbert Rodriquez alleging their wage claims as described below. [Dkt. 1]. On January 29, 2024, Defendant Rodriquez signed Waiver of Service forms on behalf of himself and the company [Dkt. 7,8]. On March 30, 2024, Plaintiffs filed a First Amended Complaint, prior to any answer or other responsive pleading having been filed, adding John Matheny as an additional Defendant. [Dkt. 11]. Mr. Matheny was served with process on May 24, 2024. [Dkt. 16]. Having received no answers from any of the Defendants, Plaintiffs requested the Clerk's Certificates of Default on August 27, 2024. [Dkt. 21-26]. The Clerk filed entries of default as to all three Defendants on August 28, 2024. [Dkt. 27-29]. In response to the Court's Order of September 3, 2024, Plaintiffs filed a Motion for Default Judgment. [Dkts. 32, 33]. A hearing was held on the Motion for Default on May 13, 2025, and Plaintiffs were ordered to file a Supplement to

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)    Motion for Default
Page 1

the Motion for Default, which was timely filed on June 3, 2025. [Dkt. 42].

On June 17, 2025, Defendant Gilbert Rodriguez, pro se, called the court about the Motion for Default. [Dkt. 44]. Magistrate Judge Braswell gave him a deadline of July 18, 2025 to respond to the Motion if he was so inclined. *Id*.

On July 16, 2025, Defendant Gilbert Rodriguez, still *pro se*, filed a Motion for Extension of Time in response to the Motion for Default. [Dkt. 46]. On August 4, 2025, Magistrate Judge Braswell held a status conference with Defendant Rodriquez and Plaintiff's counsel. [Dkt. 53] During that conference, Plaintiffs withdrew their pending Motion for Default Judgment without prejudice, and proceedings were stayed to permit time to discuss resolution. *Id*.

Defendant Gilbert Rodriguez and Gilbert's Tree Service, Inc. obtained counsel in approximately August, 2025, and settlement discussions ensued. [See Dkt. 55] Plaintiff ultimately reached a settlement with Defendants Gilbert Rodriguez and Gilbert's Tree Service, Inc. and a Settlement Agreement was signed on January 7, 2026. Such agreement specifically excludes Defendant Matheny from any releases and contemplates filing the instant motion. It also permits the other Defendants to seek indemnification against Defendant Matheny if they were to want to do so.

Defendant John Matheny remains in default. Plaintiffs therefore seek default judgment against him in the amount of their total damages owed by law, minus any amounts that they actually receive in settlement.

## III. PRELIMINARY MATTERS

### A. <u>Standard of Review</u>

"Default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 2

continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains,* 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

Pursuant to Rule 55(b)(1), default judgment must be entered by the clerk of court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Before granting a motion for default judgment, the Court must first ensure that it has personal jurisdiction over the defaulting defendants and subject matter jurisdiction over the action. <u>See</u> *Williams v. Life Sav. and Loan*, 802 F. 2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact, which are deemed admitted by a defendant in default, support a judgment on the claims against the defaulting defendants. <u>See</u> *Fed. Fruit and Produce Co. v. Red Tomato, Inc*., 2009 WL 765872, at *3 (D. Colo. March 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.") (Citations omitted). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id*. (citing *Dundee Cement Co. v. Howard Pipe and Concrete Prods., Inc*., 722 F.2d 1319, 1323 (7th Cir. 1983).

**B. <u>No Hearing Is Necessary</u>**

As relevant here, Fed. R. Civ. Proc. 55(b)(2) says that "The court *may* conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: …determine the amount of damages." (Emphasis added). "To determine the amount of damages that should be awarded on a default judgment, Rule 55(b)(2) 'leaves the decision of whether a hearing is necessary to the discretion of the district court.'" *Changxing v. Kai Xiang Dong*, 15 Civ. 7554-GBD-AJP (S.D.N.Y. Mar. 31, 2017), <u>citing</u> *Fustok v. Conticommodity Services, Inc*, 873 F.2d

38, 40 (2d Cir. 1989).

While recognizing that district courts may and sometimes do hold hearings to establish damages in default contexts, doing so is not required, and in this case Plaintiffs ask that the Court in its discretion decide not to do so. First and foremost, the damages alleged are computable from the documentary evidence provided herewith. The Plaintiffs have attested to the relevant bases for calculation (such as hours worked, pay received, and duration of employment) in the attached Declarations. Beyond that, the damages calculations become a matter of the application of legal principles and math. Second, while counsel can attend court if necessary on Plaintiffs' behalf, the time and expense of doing so would be not insignificant, and would not provide information materially different from these submissions. Thus, we request that no hearing be held. Should, however, the Court decide that a hearing is necessary, we respectfully request that Plaintiffs and their counsel be permitted to appear by telephone.

### C. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' FLSA claims arise under federal law [Dkt. 14, Amended Complaint, at ¶¶9, 10, 11].

The Court has personal jurisdiction over Defendant Matheny because, as alleged in the Amended Complaint, he is a resident of Colorado. [Dkt. 11].  Attached is a property record from Pueblo County showing that he owns the residential real estate located at 260 W Venturi Drive, Pueblo West, CO [Ex. 01].

Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiffs' related claims brought under Colorado law.

## IV. FACTUAL BACKGROUND

### A. Plaintiffs and Their Work and Pay

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 4

Plaintiffs Tyriq Miller and Isaac Smith worked as arborists for Gilbert's for a few years each. Miller worked there from approximately June 1, 2020, to August 2, 2023. [Dkt. 11 p. 1 ¶1, p. 6 ¶10]. Smith worked there from approximately August 1, 2020, to August 2, 2023. [*Id*. at p. 1 ¶1, p. 8 ¶27].

As indicated in the attached paystubs they retained, and the spreadsheet summary thereof, their rates and methods of pay varied almost week to week. [Ex. 02, 03]. Typically when the quantity of hours was listed as being fewer than 40, the payment was listed as being at an hourly rate of between $20-$25 per hour. *Id*. When the quantity of hours listed was being exactly 40, the payment was listed as being a "salary" (but of varying amounts week to week). *Id*. In "Gilbert's Tree Service Policies and Procedures," item 9 states, "Crew members will continue to be paid according to work performance and at the level of knowledge exhibited and used on the job site." [Ex. 04].

As indicated by the notes attached to Plaintiff Smith's paystubs "Jon takes out 5 hours a week for a 'break' that we do not receive" and "hours are always fluctuating & incorrect b/c he deducts hours" [Ex. 03, pp. 11, 13]. Plaintiff Smith also indicated that he "went to Cali to pick up boom truck & drive back. I received bonus personal of $1200, for going to California. When I got back, he started to deduct my bonus out of reg checks, but deducting money and/or hours" [*Id*. at p. 17]. Two paystubs indicate $100 deductions. [*Id*. at p. 17-18]. Plaintiffs have also alleged that they had deductions made to their pay for damaged equipment and tools." [Dkt. 11 p. 7 ¶24]. This is consistent with the Policies and Procedures statement No. 5 which states, "You break it or lose it – you bought it. Crew members will be required to pay ½ of the total costs of equipment lost or broken, due to neglect or irresponsibility…." [Ex. 04]. Plaintiffs have also alleged that they were not paid for the preliminary and postliminary work they did at the start and end of their workdays. [Dkt. 11 p. 7 ¶24].

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 5

Based on the above factual allegations Plaintiffs have brought claims for failure to pay for all hours worked (including failure to pay for preliminary and postliminary work, deductions of time for breaks they did not receive, otherwise "shaving" hours when more than 40 hours were worked in the week), failure to pay overtime, improper deductions to pay,

Separately from the fact that time was affirmatively deducted from their recorded working hours for meal breaks they did not receive as an item of underpayment for time worked, Plaintiffs have also alleged that the Defendants' failure to provide meal and break times violates state law requirements to do so.

Plaintiffs also claim state law penalties premised upon the fact that Defendants have made no tenders of wages in response to the claims they have informed Defendants about. More specifically, as mentioned above, prior to commencing litigation Plaintiffs, through counsel, reached out to Defendants by letter dated July 25, 2023 letting them know that the Plaintiffs were raising wage claims coupled with an invitation to enter into a tolling agreement so as to be able to discuss settlement opportunities rather than immediately filing the claim in court. [Ex. 05]. Unfortunately, in response, Defendants terminated Plaintiff Miller on August 2, 2023 [Dkt. 11 pp. 6-8 ¶¶10, 25]. Plaintiffs filed this action on January 2, 2024. [Dkt. 1]. This included an allegation that if Defendants failed to pay all wages owed within 14 days of receiving the lawsuit they would owe the Plaintiffs statutory damages as set forth in C.R.S. § 8-4-109. [Dkt. 11, p. 12 ¶75]. Defendants were served on January 29, 2024 and May 24, 2024 as set forth above. No Defendant has tendered any funds in response to this lawsuit, and more than 14 days has passed since their receipt thereof.

In addition to the wage payment improprieties, Plaintiffs have made allegations in regard to retaliation. Specifically, they allege that "Upon receipt of Plaintiffs' counsel's

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 6

letter making a preliminary introduction including that the firm's representation was in regard to the Plaintiffs' wage claim, Defendants terminated [both of them]." [Dkt. 11 p. 6-9 ¶¶10, 25, 27, 41; Ex. 05, letter].

## B. Defendant Matheny's Role

John Matheny served as a manager of the company. [Ex. 06, 07]. He also supervised the Plaintiffs, including having the ability and authority to hire and fire, set rates of pay and set schedules. [Dkt. 11, Amended Compliant, p. 5 ¶3]. For example, when Plaintiff Miller had questions about his pay, he texted Mr. Matheny about it. [Ex. 08, texts].

As Mr. Miller attested, "I was hired by Defendant John Matheny. He told me my starting rate of pay, and then he was the one who would change it. He was my day to day supervisor who told me what to do. It was my understanding that he was an owner of the company, but I also didn't consider him to be the highest ranking person in the company. … My understanding was that Mr. Rodriquez may have had other businesses besides Gilbert's so Mr. Matheny was more of the day to day manager at the company, but they worked as business partners." [Ex. 09 ¶5]. (See similar statements by Plaintiff Smith at Ex. 10 ¶4.)

By way of background, Defendant Gilbert Rodriquez was the founder and titular head of the company, but he moved to Florida some years back and started another company there that took up most of his time and energy. In doing so, he functionally delegated all of the day-to-day decision-making and management authority to Defendant Matheny, for the duration of the Plaintiffs' employment period. As such, Matheny was the one in charge of payroll functions, including setting the (changing) pay rates and pay practices at issue here.

Importantly, despite having been served with process, Defendant Matheny has

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 7

taken no steps to contest or challenge his role as "employer" in this case.

## V.  DEFENDANT JOHN MATHENY BEARS PERSONAL LIABILITY

Under federal and state law, in addition to the company, Defendant John Matheny was an "employer" of the Plaintiffs.

Since January 1, 2020, the CWA's definition of "employer" mirrors that in the FLSA.[1] C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6; Colorado H.B. 19-1267. The Colorado Division of Labor Standards and Statistics also published an Interpretive Notice and Formal Opinion ("INFO") on the topic of individual liability and describes the standard as follows:

> "Under Section 203(d) of the FLSA, an 'employer' includes '*any person* acting directly or indirectly in the interest of an employer in relation to an employee,' and the FLSA also defines a 'person' as '*an individual*, partnership, association, corporation, business trust, legal representative, or any organized group of persons.' 29 U.S.C. 203(a),(d) (emphasis added). 'The term "person" is…broadly defined under the FLSA to include…an "individual." Thus, an individual who acts directly or indirectly in the interest of an employer in relation to an employee, including an individual corporate officer, owner, participating shareholder, manager, or supervisor, may be subject to individual liability for FLSA violation.'" [CDLE INFO #11A[2]], p. 1-2 (emphasis in original).

The FLSA's definition of "employer" can and frequently does cover certain individuals as well as corporate entities. The longstanding four-factor "economic realities test" has been adopted by the Tenth Circuit for determining an employment relationship under the FLSA, which Colorado has adopted in state law. *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1189–90 (D. Colo. 2012), <u>citing</u> *Baker v. Flint Eng'g and Const. Co.*, 137 F.3d 1436, 1439 (10th Cir.1998). The *Koellhoffer* court describes

---

[1] All of the relevant nonpayment events took place after January 1, 2020, so only this standard need be examined.

[2] Available at
https://cdle.colorado.gov/sites/cdle/files/INFO%20%2311A%20Individual%20Liability%20Under%20the%20CWA%20and%20HFWA%2006.30.2021%20accessible.pdf

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)                    Motion for Default
                                                               Page 8

this analysis as follows:

> "The *Baker* court held that "[t]he economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." [  ]. In determining whether a particular individual is an employer, courts have also looked at the level of operational control the individual had over the company, meaning that the individual is either 'involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'"

(Internal citations omitted). Courts have also looked at the level of "operational control" the individual has over the company, including whether s/he is involved in the day-to-day operations and/or has some direct responsibility for the supervision of the employees. *Baker*, 137 F.3d at 1439. The breadth of coverage for individuals is intentionally expansive and not designed to be a continuation of the previous standard requiring a showing akin to a corporate veil piercing.

Following the change in the CWA there should be no dispute that Mr. Matheny was an "employer" of the Plaintiffs' as that term is defined by the COMPS Order. 7 C.C.R. 1103-1(1.6) [Dkt. 1, ¶¶11–13, 18]. Plaintiffs have alleged that the individual Defendants hired them, set their rates of pay and work schedules, and supervised them daily. More generally, Defendant Matheny had "operational control" of the company. Therefore, looking at the economic realities, Defendant Matheny was Plaintiffs' "employer" and thus should be found liable for the violations complained of herein under the FLSA and CWA.

## VI. STATUTES of LIMITATION and WILLFULNESS

Claims brought under the FLSA or under the Colorado's Wage Act (C.R.S. § 8-4-101 *et seq*.) or Colorado's Minimum Wage Act C.R.S. § 8-6-101 *et seq*. have a standard statutory period of two years that can be extended upon a finding of willfulness. C.R.S.

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 9

§ 8-4-122, 29 U.S.C. § 255(a). *By the Rockies, LLC v. Perez*, 2025 CO 56 (Sept. 15, 2025) (rejecting application of six year statutory period for Minimum Wage Act claims).

The Complaint in this action was filed on January 2, 2024. [Dkt. 1]. Plaintiffs worked for Defendants from June and August, 2020 until they were both fired on August 2, 2023.

A three year period applies to their claims. See Defendants had no good faith basis for believing their practices were compliant with the law, fired the Plaintiffs after learning they were pursuing wage claims with the assistance of an attorney and failed to respond to this lawsuit. As such, Defendants' violations are willful. A court may accept allegations of willfulness as true where defendants have defaulted. *Changxing v. Kai Xiang Dong, Ling Lin, Iron Sushi Third Ave., Inc.*, 15 Civ. 7554 (GBD) (AJP) (S.D.N.Y. Mar. 7, 2017) (collecting sites). Thus, their claims arising on or after January 2, 2021 should be included. (Plaintiffs have recalculated their damages since the filing of the original Motion for Default at Dkt. 33 given the intervening *Perez* ruling).

## VII.   PLAINTIFFS HAVE ALLEGED FACTS ESTABLISHING LIABILITY

Plaintiffs ultimately seek recovery of a) the greater of their owed back wages or owed minimum wages (which in this case means the former) b) liquidated damages in the amount of their unpaid FLSA minimum wages c) statutory penalties due to the underpayments pursuant to state law d) retaliation damages under state and federal law and e) attorney fees and costs as provided for under all three, minus f) any amounts actually paid in settlement with the other Defendants.

### A.   Time Worked and Unpaid Hours

Since Plaintiffs have not been able to have the benefit of discovery, where they would have asked for copies of all timekeeping and pay records that the employer is required to keep. 29 C.F.R. § 516.2. Plaintiffs have, however, attached the paystubs

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 10

that they were able to locate. Of Miller's 16 paystubs, 9 of them (56%) listed 40 hours; the other 7, fewer. [Ex. 02].  Similarly, of Smith's 21 legible paystubs, 11 of them (52%) listed 40 hours; the others, fewer. [Ex. 03].  As this was a business that was affected by weather conditions and customer needs, it makes sense that there would be ups and downs of this sort.

Plaintiffs have alleged that they were not paid for preliminary and postliminary work of about an hour a day. They have also alleged they had half an hour per day deducted for breaks that they did not actually always receive. [Dkt. 11 pp. 7, 9 ¶¶22-23, ¶¶38-39]. They have also alleged that they had hours shaved off whenever they worked more than 40 hours, which is consistent with the Defendants' practice of calling their pay a "salary" when they worked more than 40 hours and just listing the number of hours worked as 40 on the paystub.

Putting all this information together, as a matter of just and reasonable inference necessitated by the lack of records, Plaintiffs therefore estimate that in the weeks they worked overtime (which they estimate to have occurred 52-56% of their workweeks) they were underpaid for 12 hours a week, and in the weeks in which their hours were under 40 hours a week they were not paid for about 7 hours a week of compensable time. This number is derived as follows: In a standard five day week, then, Plaintiffs were underpaid for 5 hours (1 hour per day) for uncounted preliminary/postliminary work, plus an estimated 2.5 hours a week (1/2 hour per day) for break time that was deducted but not actually taken, i.e. about 7 hours altogether. In addition to that, they have also alleged that whenever they worked more than 40 hours, additional time was "shaved" in order to get that number down to the 40 hours shown on those paychecks, which for these purposes is being estimated as being for another approximately 5 hours.

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 11

Another way of looking at it is that for overtime weeks, Plaintiffs are claiming damages based on an estimate of 52 hours of work (i.e. 12 uncompensated overtime hours). Not counting the 1 hour a day uncompensated preliminary/postliminary work, Plaintiffs indicated they worked from 7:00am to 5:00pm, or thereabouts, which would have been a 10 hour workday; and that they generally worked five days a week. Dkt. 33.11 ¶¶8-9; Dkt. 33.12 ¶¶7-8. This means that a "typical" week would be, including the 5 hours of preliminary/postliminary time, about 55 hours of work a week. The 52 hours estimate is in essence a good faith reduction to that due to the fact that the hours worked, as shown by the paystubs, does appear to have varied so widely.

In a situation like this where the employer has both failed to keep good records and has failed to appear in proceedings at all much less participate in discovery, Plaintiffs are forced to do the best they can as a matter of "just and reasonable inference" to compute estimated damages. It is admittedly not exact, but doing it this way is consistent with the applicable legal standards where employers have failed to keep and/or produce good records.

**B. Overtime**

Based on the above, Plaintiffs estimate their damages as follows in regard to their unpaid overtime:

|  | Miller | Smith |
|---|---|---|
| Start of Employment | 6/1/20 | 8/1/20 |
| Start of SOL Period | 1/2/21 | 1/2/21 |
| End | 8/2/23 | 8/2/23 |
| Weeks | 134.6 | 134.6 |
| Rate | $    22.50 | $    22.50 |
| OT Rate | $    33.75 | $    33.75 |
| % of OT Wks | 56% | 52% |
| Est OT Weeks | 75 | 70 |
| Est Unpaid Hrs per OT Week | 12 | 12 |

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)                Motion for Default
Page 12

| | | |
|---|---|---|
| Unpaid OT per OT Wk | $    405.00 | $    405.00 |
| **Est unpaid OT for OT wks** | **$30,375** | **$28,350** |

## C. Unpaid Non-Overtime Hours

In the weeks not implicating overtime (i.e. for the 44-48% of weeks in which their paystubs indicate fewer than 40 hours) Plaintiffs are only claiming the 5 hours (1 hour per day) for uncounted preliminary/postliminary work, plus an estimated 2 hours a week, rounded down from 2.5 hours, for the uncompensated time for alleged meal breaks that they did not take. This is how the 7 hours a week for those weeks was obtained.

Plaintiffs also seek the full amount of their unpaid hourly wages (i.e. $22.50 per hour) times the 44-48% of weeks in which Plaintiffs claim damages for non-overtime work, pursuant to the Wage Claim Act. The resulting calculations from this are as follows:

| | **Miller** | **Smith** |
|---|---|---|
| Start of 3 yr SOL | 1/2/21 | 1/2/21 |
| Weeks in 3 yr SOL | 134.57 | 134.57 |
| Est non-OT Weeks in 3 yr SOL | 59.21 | 64.59 |
| Est Unpaid Hrs per non-OT Week | 7 | 7 |
| Unpaid non-OT hrs per non-OT Wk | $    157.50 | $    157.50 |
| **Est unpaid non-OT wages** | **$   9,325.80** | **$ 10,173.60** |

## D. Deductions

Plaintiffs have alleged that the employer made unlawful deductions from their pay for reasons such as broken tools. However, the only deductions that Plaintiffs have shown herein are Plaintiff Smith showing in his paystubs where two instances of $100 deductions were made for the employer taking back a bonus it had paid him for driving to California. Thus, at this time Plaintiff Smith claims $200 in unlawful deductions.

## E. Colorado Wage Act Statutory Damages

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 13

Plaintiffs are entitled to an award of the statutory penalties set forth in C.R.S. § 8-4-109(3). Defendants have not tendered any payment in response to, relevant here, their receipt of the Complaint in this action, much less within 14 days thereof. *Damitio v. Sushi Zanmai Inc.*, No. 12-CV-2603-JLK, 2013 WL 136186, at *1 (D. Colo. Jan. 10, 2013) ("nothing precludes a complaint from functioning as the 'written demand' mandated by the statute").

The penalties are two times the unpaid wages or, if the underpayment was fillful, three times. Colo. Rev. Stat. Ann. § 8-4-109(3)(b).

Plaintiffs' unpaid wage claims total: $39,846.60 (Miller) and, $38,714.34 (Smith). Three times those numbers comes to $119,539.80 for Miller and $116,143.03 for Smith.

## F. FLSA Liquidated Damages

Defendants failed to pay Plaintiffs at or above minimum wage for all hours worked. At all relevant times that amount was $7.25 per hour. Minimum wage underpayment determinations are made on a workweek by workweek basis. 29 C.F.R. § 778.105. As a hypothetical example, if a plaintiff had worked 10 hours in a week and had an hourly rate of $20 per hour, and was paid for only two of those hours (i.e. $40), she would have a minimum wage claim because the $40 received would be less than the federal minimum wage times the hours worked ($7.25 x 10 hours = $72.50). The underpayment pursuant to federal law would therefore be $32.50 (plus that amount again for liquidated damages). It would not be $160 under federal law (i.e. 10 hours x $20/hr = $200, minus $40). See *Tackie v. Keff Enterprises, LLC*, No. 14-CV-2074-JPO (S.D.N.Y. Sept. 16, 2014).

In addition to the back wages, and having established a violation of the FLSA, Plaintiffs request the Court award FLSA liquidated damages. "Any employer who violates the provisions of…section 207…shall be liable to the employee or employees

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 14

affected in the amount of their … unpaid overtime compensation…and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); *Francisco v. Susano*, Civil Case No. 10-cv-00332-CMA-MEH (D. Colo. Sep. 10, 2013). In order to avoid being assessed liquidated damages, the employer must be able to show that it acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA. 29 U.S.C. § 260. "Reasonableness imposes an objective standard by which to judge the employer's behavior. *Id.* Only where the court finds that the employer meets this burden, may it, in its sound discretion, deny liquidated damages." *Reyes v. Snowcap Creamery, Inc.*, Civil Action No. 11-cv-02755-JLK-KMT (D. Colo. Mar. 20, 2014). Defendants, having failed to appear in this action or respond to the Complaint in any form, have done nothing to meet their burden.

Here, Plaintiffs seek liquidated damages within the 3 year FLSA statutory period as follows:

|  | Miller | Smith |
|---|---|---|
| Start of 3 yr SOL | 1/2/21 | 1/2/21 |
| End | 8/2/23 | 8/2/23 |
| Weeks | 134.57 | 134.57 |
| OT Rate | $       33.75 | $       33.75 |
| % of OT Wks | 56% | 52% |
| Est OT Weeks in FLSA SOL | 75.36 | 69.98 |
| Est Unpaid Hrs per OT Week | 12 | 12 |
| Unpaid OT per OT Wk | $      405.00 | $      405.00 |
| **Est unpaid OT for OT wks in FLSA SOL** | **$   30,520.80** | **$   28,340.74** |
| FLSA MW | $         7.25 | $         7.25 |
| Est Unpaid Hrs per non-OT Week | 7 | 7 |
| Est non-OT Weeks in FLSA SOL | 59.21 | 64.59 |
| Unpaid non-OT  hrs per non-OT Wk | $       50.75 | $       50.75 |
| **Est non-OT MWs owed in FLSA SOL** | **$     3,004.98** | **$     3,278.16** |
| **FLSA Liquidated Damages** | **$   33,525.78** | **$   31,618.90** |

Plaintiffs are entitled to recover both liquidated damages and the CWA statutory

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 15

penalties. *Evans v. Loveland Auto. Invs., Inc.,* No. 15-1049 (10th Cir. 2015). This is not a double recovery because the laws "serve different purposes—the FLSA damages are compensatory and the [state law] damages serve a punitive purpose." *Id.*, citing with approval *Do Yea Kim v. 167 Nail Plaza*, No. 05 CV 8560 (GBD), 2008 WL 2676598, at *3 (S.D.N.Y. July 7, 2008). In other words, FLSA liquidated damages and C.R.S. interest are designed to make the plaintiffs whole; the CWA penalty provision is designed to punish and/or deter wrongful conduct. Pursuant to C.R.S. § 8-4-109(3)(b), if an employee is not paid his earned, vested, and determinable wages or compensation within fourteen days after sending a written demand for payment, his employer is liable to him for the wages plus a penalty.

## G. Retaliation

"Both the CWCA (at Colo. Rev. Stat. § 8-4-120) and the FLSA (at 29 U.S.C. § 215(a)) prohibit an employer from retaliating against an employee's invocation of wage protection rights." *Jones v. Peopleready Inc.*, No. 21-CV-01688-PAB-MEH, 2022 WL 2176286, at *6 (D. Colo. June 16, 2022). The two statutes are "generally the same" *Ott v. ChaCha in Art, LLC*, 506 F. Supp. 3d 1133, 1144 (D. Colo. 2020)

FLSA retaliation claims are subject to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997). In order to establish a *prima facie* case of retaliation under the FLSA, the plaintiff must show that: (1) he engaged in activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997))

Filing a FLSA lawsuit in federal court constitutes a protected activity. Termination

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 16

from employment can form the basis of a retaliation claim. *Jones*, at *7.

"A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *O'Neal v. Ferguson Const. Co*., 237 F.3d 1248, 1253 (10th Cir. 2001), citing *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982). The Tenth Circuit applies a "motivating factor" analysis to claims of retaliation under § 215(a)(3) of the FLSA. *McKenzie v. Renberg's Inc*., 94 F.3d 1478, 1483 (10th Cir. 1996)"When the 'immediate cause or motivating factor of [the adverse action] is the employee's assertion of statutory rights, the [adverse action] is discriminatory under § 215(a)(3) whether or not other grounds for [the adverse action] exist."" *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 329 (10th Cir.) The motivating factor test is equivalent to a "but for" inquiry— the adverse action is unlawful "only if it would not have occurred *but for* the retaliatory intent." *Martin v. Gingerbread House, Inc.,* 977 F.2d 1405, 1408 n. 4 (10th Cir.1992). Here, Plaintiffs allege "that Defendants violated the anti-retaliation provisions of the FLSA and CWCA by terminating them in response to their lawyer reaching out to the Defendants regarding their wage claim." (Dkt. 11 p. 2 ¶3) and that "Plaintiffs hired counsel to pursue claims related to their underpaid wages. When counsel wrote Defendants a letter of introduction, including that the nature of the dispute was a wage claim, Defendants responded by immediately terminating both Plaintiffs' employment. (*Id*. at p. 13 ¶66). They allege the last date of their employment was August 2, 2023 and the letter from their counsel addressed to all two Defendants was dated July 25, 2023 stating in relevant part "This firm represents Tyriq Miller and Isaac Smith in their claim for underpaid wages owed to them pursuant to state and federal law against Gilbert's Tree Service, Inc. d/b/a Gilbert's Tree and Landscaping and potentially yourself individually as a joint "employer" as that word is defined by the laws at issue." (Ex. 05).

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 17

This temporal proximity is sufficient to infer causation under the applicable standards.

The categories of damages for retaliation claims have not been clearly defined. *Johnston v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1229 (D. Utah 2002) (analyzing various decisions regarding the availability of punitive damages). The statutory language is that remedies include "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Thus, at a minimum, back pay and an equal amount as liquidated damages are available. Whether front pay, emotional distress damages, and/or punitive damages are available is unclear in this jurisdiction. For the sake of simplicity and in the pragmatic recognition that the amount of judgment at issue may already be stretching the limits of Defendants' ability to pay, Plaintiffs therefore are not seeking those categories of damages.[3]

If they had remained working with Defendants we can estimate that the Plaintiffs would have worked about 45 hours a week. The 45 hour a week number used for the retaliation damages is an estimate based on the assumptions (premised on the paystubs analysis and Plaintiffs' representations in their declarations) that a little more than half the time they worked around 55 hours a week, and a little less than half the time they worked non-overtime hours of about 35 hours a week (i.e. the approximately 25-37 hours a week appearing on their paystubs plus 3-4 days a week worth of another 1 hour a day of uncompensated pre-/postliminary time plus another half hour of uncompensated alleged break time). See hours summaries at Dkt. 33-5 p. 1; Dkt. 33-6 p. 1. Essentially the 45 hour a week estimate is the halfway point between the 55 hour

---

[3] Should default later be opened in this case, Plaintiffs reserve the right to revisit these other categories of damages that may be available to them.

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 18

weeks and the 35 hour weeks.

45 hours a week, at a rate of $22.50 per hour, which is (40 hours x $22.50) + (5 hours x 1.5 x $22.50) = $1068.75 per week. Plaintiff Miller in his declaration has asserted that after he was fired by the Defendants, he was out of work for 6 weeks; Plaintiff Smith, 4 weeks. [Ex. 09-10, Declarations].

Therefore their back pay damages for their retaliation claims are $6,412.50 for Plaintiff Miller and $4,275.00 for Plaintiff Smith, plus an equal amount for liquidated damages.

**H. Post-Judgment Interest**

Post-judgment interest should be awarded, calculated at the rate set forth in 28 U.S.C. § 1961, accruing from the date of entry a final judgment on this motion until the judgment is paid in full. *Kimes v. Alshawy*, No. 23-CV-00082-RMR-MDB, 2024 WL 2864147, at *8 (D. Colo. May 20, 2024), report and recommendation adopted, No. 23-CV-00082-RMR-MDB, 2024 WL 3341013 (D. Colo. June 7, 2024) (declining to award pre-judgment interest but awarding post-judgment interest in similar default judgment circumstance).

**I. Attorneys' Fees and Costs**

Should the Court grant the Plaintiffs' motion for default, pursuant to the FLSA (29 U.S.C. § 216(b)) and the CWA (C.R.S. § 8-4-110) Plaintiffs are entitled to his attorneys' fees and costs from the Defendants and to post-judgment interest. 28 U.S.C. §1961. Plaintiffs request that, upon a successful motion for default judgment, the Court permit Plaintiffs' counsel to move separately for attorneys' fees and costs. Plaintiffs request that the Court grant liability for fees and costs with the amount to be determined pending that forthcoming separate motion.

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 19

## VIII.  CONCLUSION

Following is a summary of the damages sought as described above:

(1) Wage Damages
a.  <u>Miller</u>

| | |
|---|---|
| Back Wages | $  39,846.60 |
| Liquidated damages under the FLSA | $  33,525.78 |
| <u>Statutory penalties under the CWA</u> | <u>$ 119,539.80</u> |
| SUBTOTAL | $ 192,912.18 |

b.  <u>Smith</u>

| | |
|---|---|
| Back Wages | $  38,714.34 |
| Liquidated damages under the FLSA | $  31,618.90 |
| <u>Statutory penalties under the CWA</u> | <u>$ 116,143.03</u> |
| SUBTOTAL | $ 186,476.27 |

(2) Retaliation Damages
a.  <u>Miller</u>

| | |
|---|---|
| Back pay damages: | $  6,412.50 |
| <u>Liquidated damages</u> | <u>$  6,412.50</u> |
| SUBTOTAL | $12,825.00 |

b.  <u>Smith</u>

| | |
|---|---|
| Back pay damages: | $ 4,275.00 |
| <u>Liquidated damages</u> | <u>$ 4,275.00</u> |
| SUBTOTAL | $ 8,550.00 |

(3) Post-judgment interest (at a daily rate as determined by the Clerk of the Court) until Defendants comply with the judgment;

(4) Attorneys' fees and costs (in an amount to be determined by the Clerk of the Court upon Plaintiff's counsels' further submission); and

(5) Any such other and further relief as the Court deems proper.

WHEREFORE, the Plaintiffs request that default judgment be entered against Defendant John Matheny, that they be awarded damages as outlined above, and that upon entry of the default judgment they, as the prevailing party, be granted leave to request their attorneys' fees and costs through a separate motion.

*Miller v. Gilbert's Tree Service, Inc., et al.*
Case No. 1:24-cv-00003-CNS-MDB (Dist. Colo.)

Motion for Default
Page 20

Respectfully submitted, this **20th** day of **January**, **2026.**

ANDERSONDODSON, P.C.

_s/ Penn Dodson_
**Penn A. Dodson**
_penn@andersondodson.com_
14143 Denver West Pkwy.
Ste 100-50
Golden, CO 80401
(212) 961-7639
Attorney for Plaintiffs

**LIST OF EXHIBITS**
1. Pueblo Co. property records (Matheny residential address)
2. Miller Paystubs & Summary
3. Smith Paystubs & Summary
4. Policies & Procedures
5. 7/25/2023 Letter Inviting Tolling
6. Business Report
7. BBB Review
8. Texts
9. Declaration of Tyriq Miller
10. Declaration of Isaac Smith
11. Damages Calculations Spreadsheet